40884. LASSETER v. GEORGIA PUBLIC SERVICE COMMISSION.
40885. AMERICAN CYANAMID v. GEORGIA PUBLIC SERVICE COMMISSION.
(319 SE2d 824)

CLARKE, Justice.

Appellants, industrial customers and one individual customer of Savannah Electric and Power Company (SEPCO), challenge decisions of the Georgia Public Service Commission (the "Commission") in four related cases:

(1) The coal conversion case (Docket No. 3361-U), which involves a statute (OCGA § 46-2-26.3) directing the Commission under certain circumstances to permit an electric utility to recover on an accelerated basis the cost incurred in converting 25% of its electric generat-

ing capacity from oil to coal;

(2) The coal conversion financing case (Docket No. 3352-U), which involves the Commission's approval of SEPCO's application for authority to issue unsecured sinking fund notes and first mortgage bonds to provide permanent financing for a portion of the cost of converting its Effingham Plant I generating facility;

(3) The rate case (Docket No. 3360-U), which involves the Commission's approval of SEPCO's application to increase base rates and charges for electricity sold;

(4) The fuel adjustment case (Docket No. 3381-U), which involves SEPCO's filing an application pursuant to OCGA § 46-2-26 proposing an adjustment in its fuel cost recovery schedule.

Appellants insist that the Commission's findings in all four cases are erroneous. Appellants contend that OCGA § 46-2-26.3, the Coal Conversion Statute, is unconstitutional because it violates equal protection and because it is unconstitutional special legislation. They argue that the rates approved in the coal conversion financing case, the rate case, and the fuel adjustment case are unjust and unreasonable and that in the rate case the Commission failed to make the findings of fact and conclusions of law as required by the Georgia Administrative Procedure Act. Appellants insist the Commission acted arbitrarily and capriciously in the coal conversion case and the coal conversion financing case. Finally, the appellants suggest that the court should overrule *Hall v. Ault,* 240 Ga. 585 (242 SE2d 101) (1978).

1. SEPCO converted an electric generating plant from petroleum fuel to coal fuel. The usual life of such a converted facility is thirty-two years, but the Coal Conversion Statute allows the Commission to use an accelerated cost recovery of not more than seven years in calculating electrical rates. Appellants complain that the statute violates equal protection because such a calculation benefits future customers to the detriment of present customers. Appellees respond, and we agree, that present customers and future customers do not form discrete classes for purposes of equal protection analysis because customers are a constantly fluctuating group.

If present and future customers did form discrete classes, equal protection analysis would begin with the question of whether there is a rational basis for disparate treatment. *Allied Chemical Corp. v. Ga. Power Co.,* 236 Ga. 548 (224 SE2d 396) (1976). In *Allied Chemical,* the court found, "We cannot say that the Commission acted irrationally in electing to give residential users [of electricity] a price 'break' of some dimension in the new 'energy crisis' era, and for this to be done some other class must take up the slack." Id. at p. 555. The court concluded that "the evidence before the court was adequate to show that the higher price assessed against the industrial class rested upon a rational basis which was reasonably related to the legitimate

ends of utility rate making." Id.

Here the evidence before the Commission was that there would be fuel savings of more than $800 million over the life of the plant. There was testimony from the company's chief executive officer that although the company would have converted the plant even in the absence of the benefit provided by the accelerated depreciation, the cost to the customers would have been higher. The Commission's expert testified that the conversion treatment benefited both SEPCO and its customers.

Thus a rational basis exists for the accelerated depreciation and for the consequent financial burden which it places upon the present customers. Appellants' attack on the Coal Conversion Statute's unconstitutionality on grounds of equal protection must fail.

2. The next attack on the Coal Conversion Statute is an argument that the statute is special legislation. Art. I, Sec. II, Par. VII of the 1976 Georgia Constitution provides that laws of a general nature shall have uniform operation throughout the state and, further, that no special law may be enacted in any case for which provision has been made by general law.

To violate the constitutional provision, the statute in question must either be a general law which lacks uniform operation throughout the state or a special law for which provision has been made by existing general law. Whether the accelerated write-off statute fits either of these descriptions depends first upon the distinction between general and special laws.

A general law has been held to be one which operates uniformly throughout the state upon the subject or class of subjects with which it proposes to deal. *Lorentz & Rittler v. Alexander*, 87 Ga. 444 (13 SE 632) (1891); *Union Savings Bank &c. Co. v. Dottenheim*, 107 Ga. 606 (34 SE 217) (1899). When a statute purports to do this, but in application lacks uniform operation, it runs afoul of the constitution. A special statute is one which affects a limited area or class.

The statute before us deals with a limited activity in a specific industry during a limited time frame. The parties admit it affects only one plant. To designate this as a general law would amount to the acceptance of a fiction which would strain the credibility of the court. It is a special law and must stand or fall as viewed in that posture. In so viewing the statute, we first note that the constitution does not prohibit special laws per se. The legislature may enact special laws affecting special classes, but it cannot do so if it has previously legislated in that area by general law nor may it do so if the classification of those affected is unreasonable. The preemption is expressly covered by Art. I, Sec. II, Par. VII of the 1976 Georgia Constitution. The requirement of reasonable classification comes from the equal protection guarantee. Art. I, Sec. I, Par. II, 1983 Georgia Con-

stitution (Art. I, Sec. II, Par. III, 1976 Georgia Constitution).

Appellants argue that the legislature has by general law, OCGA § 46-2-23, vested the Public Service Commission with the exclusive power to set rates for public utilities and that any special legislation in this area is therefore preempted. We do not agree. OCGA § 46-2-23 has never been construed. We now construe this section to mean that the Public Service Commission, rather than any other agency of the executive branch, has authority to regulate public utilities. This grant of authority of the Public Service Commission, to the exclusion of other executive branch agencies, does not mean that the General Assembly has divested itself of its constitutional power to regulate public utilities. Since there has been no such abrogation of legislative authority, no preemption has occurred.

We turn now to the equal protection issue and find no violation of the constitution. "[I]t is not only within the power of the General Assembly to classify subjects for legislation, but . . . in many instances it is not only wise but necessary for the public good that there should be a classification. . . . Artificial persons — mere creatures of the law — are of necessity required to be formed into the classes, in order that there may be intelligent legislation regulating the powers and disabilities of these creatures of the law." *Union Savings Bank v. Dottenheim,* supra at pp. 625-26. When the legislature engages in the constitutionally authorized function of regulating a public utility, it embarks upon a course of action which necessarily involves the imposition of limitations and the granting of rights to limited numbers of parties under narrowly defined circumstances. These limitations are imposed and these rights are granted so that the public may be protected. The protection sought for the public is the assurance of dependable electrical service at a fair cost. The accomplishment of this goal requires statutes, rules and procedures which operate upon a narrow range of events and parties but accrue to the benefit of all members of the public. The very nature of regulatory activity requires treatment of specific ills in a specific industry to insure viable operation for the general good.

An act must be construed to support its constitutionality if there is one construction which would support constitutionality and one which would not. *City of Calhoun v. North Ga. Electric Membership Corp.,* 233 Ga. 759 (213 SE2d 596) (1975). There is no legislative history available to aid in construction of the act in question, but its reasonableness can be determined from its terms. The act applies to plants undergoing conversion from oil to coal by January 1, 1982, and completing conversion by December 31, 1982. The act was enacted March 1, 1982 and effective November 1, 1982. Thus, the intent was not to encourage conversion but, rather, to aid entities already undergoing conversion. The act applies only to utilities with 25 percent or

more of their total generating capacity oil-fired which were undergoing a conversion to coal on January 1, 1982 to be completed by December 31, 1982. Such utilities could file a request to adjust rates and charges to recover costs of conversion. The rate of conversion cost recovery would be determined after hearings as to the actual cost and the fuel savings anticipated. The Commission would allow recovery only if it determined that the projected cost would be less than anticipated fuel savings to retail customers over the remaining life of the generating facility. In the event the Commission decided to allow recovery, it would set an amortization schedule, not to exceed seven years. The act finally provides that after recovering the cost of conversion the utility could no longer charge any rate authorized to recover the cost of conversion. It is apparent from this legislative scheme that the conversion to coal was deemed advantageous because of lower fuel costs. The 25 percent requirement was made part of the legislation to assure that the conversion applied to a substantial portion of the facility's generating capacity. The time limitation, which in effect limits the statute to facilities already undergoing conversion, makes it obvious that the intent of the legislature was not to encourage conversion but, rather, to provide for recovery of the cost of conversion.

There is no evidence that the conversion from oil to coal would be financially advantageous to the utility except insofar as it is more economical to use coal as fuel than oil. The act makes recovery available only if the anticipated fuel savings is greater than the recovery cost. The act further provides that once the cost of conversion is recaptured the rates charged customers may no longer reflect the conversion factor. It is therefore possible to conclude that the statute does not confer a special benefit upon the utility. In light of this fact, we are unable to find the statute unreasonable because its application is in fact limited to only one plant.

3. The next issues raised by appellants relate to the reasonableness of the rates approved in the coal conversion case (No. 3361-U), the rate case (No. 3360-U), the fuel adjustment case (No. 3381-U) and the authorization of unsecured sinking fund notes and first mortgage bonds in the coal conversion financing case (No. 3352-U). Appellants contend that the rates approved are unjust and unreasonable and that the Commission acted arbitrarily and capriciously in allowing the rates and bonds to be issued. Appellants also complain that the Commission failed to make essential findings of fact and conclusions of law on rate design issues in No. 3360-U.

The applicable standard of review for the reasonableness of rates is set forth in *Hall v. Ault*, 240 Ga., supra. The court in reviewing administrative decisions shall not substitute its judgment for that of the board if there is any evidence to support its findings. Appellants

invite us to overrule *Hall v. Ault*, but we decline to do so. Therefore, the enumerations dealing with decisions of the Commission to approve rates and the issuance of sinking fund notes and mortgage bonds must be analyzed in terms of whether there is any evidence to support these decisions.

At the outset we note that while appellants are insisting that "clearly erroneous" under the Administrative Procedure Act does not mean "any evidence" as was held in *Hall v. Ault*, supra, they contend that the decisions should be overturned because appellees have not shown that the relief sought by appellants should not be granted. This is an incorrect statement of the burden of proof. Under either the "any evidence" rule or the test urged by appellants, the burden is upon appellants to show that there was no support for the Commission decisions. Appellants have failed to point to any contested issue for which there is a lack of supporting evidence but have merely attacked the credibility of the evidence. Credibility is a matter for the trier of fact, the Commission. As the Court of Appeals noted in *Atlanta Gas Light Co. v. Public Service Commission*, 152 Ga. App. 366 (262 SE2d 628) (1979), while the appellate court cannot hide behind the "any evidence" rule and must scrutinize the evidence to obtain a proper understanding of the case, ". . . where there is competent expert testimony on both sides relating to highly technical results of future actions, appellate courts can and should respect the expertise of the tribunal involved, the burden remaining upon the losing party to demonstrate harmful error." Id. at 374. We find that there is competent evidence in the record to support the decision of the Commission in each of the cases under consideration.

4. Appellants' final enumeration of error, that there were no findings of fact as to rate design, does not warrant reversal of the rate case.

*Judgment affirmed. All the Justices concur, except Weltner, J., who concurs in the judgment only.*

DECIDED SEPTEMBER 5, 1984.

*Hicks, Maloof & Campbell, Robert E. Hicks, Charles E. Campbell,* for appellants.

*Joel R. Dichter, Bouham, Williams & Levy, George W. Williams, Leamon R. Holliday III, Michael J. Bowers, Attorney General, Jim O. Llewellyn, Senior Assistant Attorney General,* for appellee.