## S99A1148. ROUSE v. DEPARTMENT OF NATURAL RESOURCES.

(524 SE2d 455)

SEARS, Justice.

We granted the application for discretionary appeal filed by the appellant, William Rouse, to review his challenges to the constitutionality of the Protection of Tidewaters Act (the "Act").[1] Concluding that Rouse's attacks on the constitutionality of the Act are without merit, we affirm the superior court's judgment.

Under the Act, which became law in 1992,[2] the Georgia Department of Natural Resources (the "DNR") has the authority to order the removal of any "structure"[3] that is located upon the "tidewaters"[4] of the State.[5] The DNR also has the authority to permit a structure that pre-dated the Act to remain on the State's tidewaters for a maximum of five years from July 1, 1992.

Rouse has a houseboat and a river house located on the tidal portion of the Altamaha River, both of which pre-date the Act. The houseboat consists of a wood frame of six walls and a roof bolted together. It has Styrofoam blocks for floatation, and is held to the shore by four ropes attached to trees. The DNR granted Rouse a permit for the houseboat to remain on the river until June 30, 1997. The river house is an unpermitted, three story building on stilts. The stilts are embedded in the river bottom in concrete cylinders. The DNR refused to grant a permit for the river house because the DNR determined that it did not meet the minimum requirements of "sanitation, safety, and construction" for obtaining a permit.[6] Rouse does not own the land to which the river house and houseboat are secured.

In August 1997, the Commissioner of the DNR ordered Rouse to remove both the houseboat and river house on the ground they were "structures" within the meaning of the Act and were located upon "tidewaters" of the State. Rouse subsequently petitioned for a hear-

---

[1] See OCGA §§ 52-1-1 to 52-1-10.

[2] Ga. L. 1992, 2317.

[3] The term "structure" is defined by OCGA § 52-1-3 (3).

[4] The term "tidewaters" is defined by OCGA § 52-1-3 (4).

[5] OCGA § 52-1-5 sets forth the DNR's power to order the removal of such structures.

[6] OCGA § 52-1-10 (a).

ing before an administrative law judge,[7] contending, among other things, that the river house and the houseboat were not "structures" within the meaning of the Act[8] and were not located on "tidewaters" as defined in the Act. Rouse also raised several constitutional challenges to the Act. The administrative law judge affirmed the order of removal. The ALJ found that the houseboat was entirely located on the tidewaters; that the majority of the river house is located upon the tidewaters; that neither the river house nor the houseboat is practical for purposes of transportation on the water; and that their construction is consistent with land based building techniques and methods. The ALJ concluded that the river house and houseboat were structures within the meaning of the Act. Additionally, although the Act exempts "vessels which are capable of navigation and are tied up at marinas,"[9] the ALJ ruled that the houseboat and the house were not capable of navigation and were not tied up at marinas. For these reasons, the ALJ concluded that the DNR was authorized to order the removal of the houseboat and of the portion of the river house that is located on the tidewaters as determined by the average river levels. Finally, although Rouse contended that the terms "structures" and "tidewaters" were unconstitutionally vague; that the Act was unconstitutional in that it was not narrowly tailored to accomplish a compelling government objective; that Rouse was being denied equal protection by the Act; that the Act was being selectively enforced against him; and that ordering him to remove his property was an unconstitutional taking of private property, the ALJ concluded that these issues exceeded her authority as an ALJ.

Rouse appealed the ALJ's decision to superior court where he raised the same issues that he raised before the ALJ. The superior court held a hearing on the case, but did not enter an order within 30 days of the hearing,[10] and the case therefore was affirmed by operation of law.[11] Rouse then filed an application to appeal in this Court, which we granted.

1. Before addressing Rouse's enumerations of error, we first address whether the superior court's affirmance by operation of law of the DNR's decision constitutes a sufficient ruling on the constitutional issues to enable Rouse to raise them on appeal. In *Nix v. Long Mountain Resources*,[12] we held that a superior court's affirmance by operation of law under the circumstances set forth in § 12-2-1 (c) did

---

[7] See OCGA § 52-1-6.

[8] See OCGA § 52-1-3 (3).

[9] OCGA § 52-1-3 (3).

[10] See OCGA § 12-2-1 (c).

[11] OCGA § 12-2-1 (c), (d).

[12] 262 Ga. 506 (422 SE2d 195) (1992).

not violate equal protection or due process.[13] We specifically concluded that due process did not require a written opinion by the superior court because the "presumption is that the superior court does not write an order because it agrees with the result of the Board's decision."[14] In this case, we likewise conclude that the presumption is that the superior court did not write an order because it found, in relevant part, that the constitutional challenges raised by Rouse were without merit. Stated differently, because Rouse raised numerous issues, each of which would have entitled him to prevail on his petition for review, the trial court must necessarily have rejected each of those issues to affirm the administrative decision. We thus conclude that the superior court's ruling is effectively a distinct ruling on the constitutional issues and is a sufficient ruling to permit Rouse to raise his constitutional challenges on appeal.[15] If we were to hold otherwise, the constitutionality of § 12-2-1 (c) would be in doubt, as the superior court, by refusing to enter a written order, would effectively be denying the litigant the right of review granted by § 12-2-1 (c) with regard to constitutional issues.[16]

2. In his first enumeration of error, Rouse contends that the definitions of "structure" and "tidewaters" are unconstitutionally vague. For the reasons that follow, we conclude that the terms are not unconstitutionally vague.

(a) We first address Rouse's vagueness challenge to the term "structure."[17] "A statute violates due process if it is so vague that per-

---

[13] Id. at 508-510.

[14] Id. at 509.

[15] See *Hancock County v. Williams*, 230 Ga. 723, 724 (198 SE2d 659) (1973), in which Hancock County raised a constitutional issue in support of its motion to dismiss, and this Court held that the denial of the motion to dismiss was a sufficient ruling on the constitutional issue.

[16] See *Nix*, 262 Ga. at 509, where we noted that the statute "would violate due process if the trial court refused to schedule or hold a hearing *on request* within 90 days of the filing of the petition," as the refusal to do so would deny the litigant the right of review granted by the statute.

[17] The Act defines "structure" as

any structure located upon any tidewaters of this state, whether such structure is floating upon such tidewaters and is made fast by the use of lines, cables, anchors, or pilings, or any combination thereof, or is built upon pilings embedded in the beds of such tidewaters when such structure is being or has been used or is capable of being used as a place of habitation, dwelling, sojournment, or residence for any length of time; is not being used or is not capable of being used as a means of transportation upon such tidewaters; and is not owned, occupied, or possessed pursuant to a permit issued by the commissioner pursuant to Code Section 52-1-10. Such structures may include, but are not limited to, vessels not being used in navigation; provided, however, that structures do not include vessels which are capable of navigation and are tied up at marinas. Structures shall also not include fishing camps, bait shops, restaurants, or other commercial establishments permitted under Part 4 of Article 4 of Chapter 5 of Title 12, the "Coastal Marshlands Protection Act of 1970," as amended, which do not discharge sewage into the waters of the state and

sons of common intelligence must necessarily guess at its meaning and differ as to its application. *Fisch v. Randall Mill Corp.*, 262 Ga. 861 (1) (426 SE2d 883) (1993); *Sliney v. State*, 260 Ga. 167 (391 SE2d 114) (1990)."[18] Rouse contends that because the definition of "structure" in the Act fails to define the term "means of transportation," the statute is unconstitutionally vague. We disagree with this contention, as we conclude that the phrase "means of transportation" has a commonly understood meaning, and needs no specific definition within the statute. Moreover, reviewing the definition of "structure" provided by § 52-1-3 (3), as well as statutory intent provided by OCGA § 52-1-2,[19] which also provides guidance as to the structures that fall within the Act, it is clear that the Act applies to structures, meaning "something constructed or built,"[20] (1) that "[are] being, or [have been] used or [are] capable of being used as a place of habitation, dwelling, sojournment, or residence for any length of time"; (2) that are not being used or are not capable of being used as a means of transportation; and (3) that are "not owned, occupied, or possessed pursuant to a permit issued by the commissioner."[21] For these reasons, we conclude that the Act is not unconstitutionally vague for its failure to provide a specific definition of the phrase "means of transportation."

(b) As for the term "tidewaters," the Act provides that it "means the sea and all rivers and arms of the sea that are affected by the tide, where the tide rises and falls, which are capable of use for fishing, passage, navigation, commerce, or transportation, and which are located within the jurisdiction of the State of Georgia." Rouse contends that the term "tidewaters" is vague because the statute does not provide a basis for determining what waters are within the jurisdiction of the State. We conclude, however, that the statute plainly is intended to apply to all public waters within the territorial limits of the State of Georgia,[22] and that the statute is not vague in this regard.

3. Rouse next contends that the superior court erred in failing to

---

are operated in conformance with the zoning ordinances, if any, of the municipality or county in which they are located.
OCGA § 52-1-3 (3).

[18] *Santana v. Ga. Power Co.*, 269 Ga. 127, 128 (498 SE2d 521) (1998).

[19] OCGA § 52-1-2 provides as follows:
The General Assembly further finds and declares that structures located upon tidewaters which are used as places of habitation, dwelling, sojournment, or residence interfere with the state's proprietary interest or the public trust, or both, and must be removed to ensure the rights of the state and the people of the State of Georgia to the use and enjoyment of such tidewaters.

[20] Webster's Third New International Dictionary 2267 (1961).

[21] OCGA § 52-1-3 (3).

[22] See OCGA §§ 50-2-1; 50-2-20; 52-2-1.

rule that the Act is unconstitutional because it impacts on a fundamental interest of his and is not narrowly tailored to accomplish a compelling government objective. We conclude, however, that the Act does not impinge on any fundamental right,[23] and that it is rationally related to the governmental interest in protecting the tidewaters of the State for the use and enjoyment of the State's citizens.[24]

4. Rouse also contends that the Act violates equal protection in that it excepts commercial establishments such as fishing camps, bait shops, and restaurants from its provisions. For the reasons that follow, we find no merit to this challenge to the Act.

Because a fundamental right is not involved, the legislative classification need only bear a reasonable relationship to a legitimate state purpose to survive the equal protection challenge.[25] This "rational basis test requires that the classification drawn by the legislation be reasonable and not arbitrary, and rest upon some ground of difference having a fair and rational relationship to the legislation's objective, so that all similarly situated persons are treated alike."[26] In the present case, because the General Assembly could reasonably conclude that the type of commercial establishments exempted from the Act benefit the public's use of the State's tidewaters, we conclude that it was reasonable for the General Assembly to provide them with an exemption from the Act. For these reasons, we conclude that Rouse's equal protection challenge is without merit.

5. Rouse next contends that the Act is being selectively enforced against him, thus denying him equal protection. We disagree.

" 'Some selective enforcement is not in itself a constitutional violation. To be a constitutional violation, the selective enforcement must represent an *intentional and purposeful discrimination* based upon some unjustifiable standard such as race, religion, or other arbitrary classification.' "[27] Here, although there was some evidence that the General Assembly had granted easements to a few structures along a river in Chatham County so as to allow them to remain in State tidewaters, the evidence was that the easements were granted because the people who owned the structures also owned the land adjacent to the structures and had sewage facilities tied into that land. Neither of these considerations applies to Rouse's struc-

---

[23] See *City of Atlanta v. Watson*, 267 Ga. 185, 187-188 (475 SE2d 896) (1996); *Ambles v. State*, 259 Ga. 406 (2) (b) (383 SE2d 555) (1989).

[24] See generally *Watson*, 267 Ga. at 188-189.

[25] *Barnett v. State*, 270 Ga. 472 (510 SE2d 527) (1999); *Watson*, 267 Ga. at 187-188; *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657, 659 (437 SE2d 308) (1993).

[26] *Watson*, 267 Ga. at 187-188.

[27] *Dept. of Natural Resources v. Union Timber Corp.*, 258 Ga. 873, 876 (375 SE2d 856) (1989) (quoting *Sabel v. State*, 250 Ga. 640, 643 (4) (300 SE2d 663) (1983)) (emphasis in *Dept. of Natural Resources*).

tures. Accordingly, we conclude that Rouse has failed to prove that the Act is being selectively enforced against him purposefully and intentionally based upon some unjustifiable standard.

6. Rouse's final contention is that the Act amounts to an unconstitutional taking of property without just and adequate compensation. However, because Rouse had no permit to maintain his structures on public waters when he placed them there, and because he was not exempt from the State's exercise of its police powers to further an important governmental objective, he does not have a legitimate claim of entitlement to continue to maintain his structures in their present location.[28] Accordingly, Rouse has no protectible property interest that would permit him to maintain his structures on public tidewaters, and his claim that enforcing the Act against him constitutes an unconstitutional taking of property without just and adequate compensation is therefore without merit.[29]

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 22, 1999.

*John M. Hatfield,* for appellant.
*Thurbert E. Baker, Attorney General, James A. Chamberlin, Jr.,* for appellee.

