S09A0636. DEVELOPMENT AUTHORITY OF DeKALB COUNTY et al. v. STATE OF GEORGIA et al.

(684 SE2d 856)

HUNSTEIN, Chief Justice.

Development Authority of DeKalb County ("DADC") and DeKalb County appeal from the superior court's rejection of their constitutional challenges to OCGA § 36-75-11 (c), which imposes a referendum requirement on the issuance of bonds by "[a]ny authority" which is authorized to operate and incur bonded indebtedness in a county

with an activated public safety and judicial facilities authority ("PSJF authority") and which has constructed or operated buildings or facilities for use by any such county. Finding that DADC comes within the category of authorities governed by the statute, the superior court denied a petition to confirm and validate the issuance of bonds for completion of a performing arts center due to the failure to obtain prior approval from DeKalb County voters. Finding no error in the superior court's ruling, we affirm.

The case involves the impact of the War on Terrorism Local Assistance Act, OCGA § 36-75-1 et seq. ("WTLA Act"), on authorities subject to the Development Authorities Law, OCGA § 36-62-1 et seq. ("DAL"). Under the provisions of the DAL, DADC was excepted from any referendum requirement arising out of the sale or issuance of bonds. OCGA § 36-62-11. This provision was not affected by the initial enactment of the WTLA Act, see Ga. L. 2003, p. 862, § 1, which authorizes the activation of a PSJF authority by any county or city that imposes a sales tax levied for the purposes of a metropolitan area system of public transportation. As the parties acknowledge, only the City of Atlanta, Fulton County and DeKalb County currently meet the criteria to activate a PSJF authority; moreover, DeKalb County is the only county that has so activated a PSJF authority pursuant to the WTLA Act.

The issue at the core of this appeal arose when the WTLA Act was amended in May 2007 to add OCGA § 36-75-11. Ga. L. 2007, p. 421, § 1. Subsection (a) of that statute requires PSJF authorities created and activated by a single county to obtain voter approval before issuing bonded indebtedness for new projects. The provision challenged by appellants is subsection (c) of the statute, which extends the referendum requirement to "[a]ny authority" subject to the following two criteria: the authority is "authorized by general or local Act to operate and incur bonded indebtedness in a single county that has activated or that activates a [PSJF authority]," id. at (c) (1), and the authority "constructs or operates buildings or facilities for use by any department, agency, division, or commission of any county that has activated or that activates a [PSJF authority]." Id. at (c) (2). Uncodified § 3 of the legislation enacting OCGA § 36-75-11 expressly provides that "[a]ll laws and parts of laws in conflict with this Act are repealed." Ga. L. 2007, supra, p. 422, § 3.

As noted above, appellant DeKalb County is the only county in Georgia that has an activated PSJF authority, and it is uncontroverted that appellant DADC meets both of the criteria required of "[a]ny authority" in OCGA § 36-75-11 (c), inasmuch as DADC is both authorized to incur bonded indebtedness in DeKalb County and has constructed or operates buildings or facilities for use by a DeKalb County department, agency, division or commission. Accordingly,

under the plain and unambiguous terms of OCGA § 36-75-11 (c), DADC is required to "obtain approval by resolution and referendum . . . prior to issuing bonds for any new buildings or facilities or improvements to existing buildings or facilities," id.,[1] even though DADC was previously excepted from any referendum requirement arising out of the sale or issuance of bonds under the DAL. OCGA § 36-62-11.

1. At the outset we recognize that "'all presumptions are in favor of the constitutionality of an act of the legislature' [cit.]," *Mayes v. Daniel*, 186 Ga. 345, 350 (1) (198 SE 535) (1938) and that "before an Act of the legislature can be declared unconstitutional, the conflict between it and the fundamental law must be clear and palpable and this [C]ourt must be 'clearly satisfied of its unconstitutionality.' [Cits.]" *City of Calhoun v. North Georgia Elec. &c. Corp.*, 233 Ga. 759, 760-761 (213 SE2d 596) (1975). Moreover, because statutes are "presumed to be constitutional until the contrary appears, . . . the burden is on the party alleging a statute to be unconstitutional to prove it." (Citations and punctuation omitted.) *Dee v. Sweet*, 268 Ga. 346, 348 (1) (489 SE2d 823) (1997).

2. Appellants contend that the referendum requirement in OCGA § 36-75-11 (c) violates the "uniform terms and conditions" provision for development authorities in Art. IX, Sec. VI, Par. III of the Georgia Constitution of 1983. As an initial matter, appellants contend the trial court erred by resolving their challenge by utilizing uniformity principles developed under Art. III, Sec. VI, Par. IV (a). Both of these constitutional provisions set forth a requirement for the consistent application of laws throughout this State, either generally, as in the latter provision, or specifically to development authorities, as in the former. Accordingly, under the well-recognized rule of construction that "a term repeatedly used in a constitution in a plain and manifest sense will generally be given the same meaning throughout the instrument," 16 AmJur2d Constitutional Law § 75, p. 451, we agree with the trial court that the uniformity required by Art. IX, Sec. VI, Par. III in the laws creating development authorities is the same uniformity required by Art. III, Sec. VI, Par. IV (a) in "[l]aws of a general nature."

As this Court stated in *C & S National Bank v. Mann*, 234 Ga.

---

[1] Although HB 203, introduced at the 2009 session of the Georgia General Assembly, proposed to limit the referendum requirement only to the issuance of bonds "the principal and interest of which will be repaid, directly or indirectly, through funds of the county," id. at § 2, the bill was not enacted and thus the referendum requirement in OCGA § 36-75-11 (c) continues to apply, without restriction, to a qualifying authority's issuance of bonds for "*any* new buildings or facilities or improvements to existing buildings or facilities." (Emphasis supplied.)

884 (218 SE2d 593) (1975):

> "Our state Constitution only requires a law to have uniform operation; and that means that it shall apply to all persons, matters, or things which it is intended to affect. If it operates alike on all who come within the scope of its provisions, constitutional uniformity is secured. Uniformity does not mean universality. This constitutional provision is complied with when the law operates uniformly upon all persons who are brought within the relations and circumstances provided by it. [Cit.]" [Cits.] A law which operates uniformly upon all persons of a designated class is a general law within the meaning of the Constitution, provided that the classification thus made is not arbitrary or unreasonable. [Cit.]

Id. at 889 (3). Appellants argue OCGA § 36-75-11 is unconstitutional for two reasons: the statute is unreasonable and arbitrary because it applies to development authorities in counties but not those in municipalities, and the statute lacks uniformity because it applies to only one county development authority, namely, DADC. We find no merit in either argument. In light of our agreement with the trial court that the purpose of OCGA § 36-75-11 is "to protect against the accumulation of excessive bonded indebtedness," the Legislature had a reasonable basis to first address this critical financial situation in counties. See generally *Farley v. State*, 272 Ga. 432 (531 SE2d 100) (2000) (under rational basis test, legislature may legitimately make imperfect and piecemeal classifications in area of economics). Accordingly, we reject appellants' contention that the classification in OCGA § 36-75-11 is unreasonable and arbitrary.[2]

As to appellants' other argument, the plain language of OCGA § 36-75-11 establishes that it applies to "[a]ny authority" that meets the criteria set forth in subsection (c); it is not unconstitutional merely because DADC is presently the only authority that meets those criteria. As we stated in *Mayes v. Daniel*, supra, 186 Ga. at 356 (5), " '[i]t is not necessary that every [development authority] in the State, at the time of the passage of the law, should fall within its operation, but it is necessary that none should be excepted in such a way that it can never fall within its provisions.' [Cit.]" Because

---

[2] Although municipalities were initially included in the House Bill that became OCGA § 36-75-11 (c), see H.B. 181, Ga. Senate Journal, 2007 Reg. Sess., pp. 2838-2839, Sen. Kasim Reed of the 35th proposed an amendment to strike "municipality" from the bill, which was adopted, id. at 2840, and the bill, with Sen. Reed's amendment among others, was eventually enacted as Ga. L. 2007, p. 421.

OCGA § 36-75-11 applies in precisely the same way and without exception to every county development authority throughout the State that currently meets or may, in the future, meet the criteria set forth in subsection (c), the trial court did not err by rejecting this constitutional challenge to the statute.

3. Appellants next contend that OCGA § 36-75-11 (c) violates the constitutional provision in Art. III, Sec. VI, Par. IV (a) that "no local or special law shall be enacted in any case for which provision has been made by an existing general law." This argument is based on appellants' contention that OCGA § 36-75-11 (c) is a special law that unconstitutionally affects an area governed by general law, namely, the DAL. See OCGA § 36-62-11. This argument fails, however, based on our holding in Division 1, supra, that the legislative classification in OCGA § 36-75-11 is reasonable[3] and that the statute applies generally to "[a]ny authority" that meets the criteria in subsection (c). As the trial court correctly found, OCGA § 36-75-11 (c) is a general law that preempted by implication the exemption from referenda set forth in OCGA § 36-62-11 as to those development authorities that meet the criteria of authorities defined in OCGA § 36-75-11 (c). The trial court did not err by rejecting this constitutional challenge.

4. In their final enumeration, appellants contend that Act 235, House Bill 181, Ga. L. 2007, p. 421 ("H.B. 181"), the legislation enacting OCGA § 36-75-11 (c), violated the "multiple subject" provision in Art. III, Sec. V, Par. III. This provision prohibits the passage of any bill that "refers to more than one subject matter or contains matter different from what is expressed in the title thereof." Although both parties to this appeal attempt to support their respective arguments by quoting extensively to comments made by lawmakers during the legislative process,[4] this Court considers only the language set forth by the Legislature in enacting a law and the official journals of each branch of the General Assembly. See generally *Sharpe v. Lowe*, 214 Ga. 513, 518 (106 SE2d 28) (1958).

The subject matter of H.B. 181 is stated in its caption:

> To amend Chapter 75 of Title 36 of the Official Code of Georgia Annotated, relating to war on terrorism local

---

[3] Although appellants argue the purpose of the "county"-only provision in OCGA § 36-75-11 (c) was to exclude the City of Atlanta, the effect of the statutory language is to exclude any municipality that may eventually meet the qualifications to activate a PSJF authority.

[4] It appears that these statements are drawn from the archives of the excellent "Lawmakers" program, a special newscast that Georgia Public Broadcasting has produced since 1971 and that airs every night the Georgia General Assembly convenes for the duration of each legislative session.

assistance, so as to provide for limitations with respect to the creation, activation, and activities of [PSJF] authorities; to require resolutions and referendums prior to issuing bonds for new projects; to provide that certain authorities located in counties that have activated or activate [PSJF] authorities shall obtain approval by resolution and referendum prior to issuing bonds; to provide that counties or municipalities that activate a [PSJF] authority shall not activate a joint [PSJF] authority; to provide for related matters; to provide an effective date; to repeal conflicting laws; and for other purposes.

Appellants assert that, because H.B. 181's caption does not reference the DAL or "development" authorities and contains no explicit repeal of the referendum exemption in the DAL, it constitutes the kind of "surprise legislation" that Art. III, Sec. V, Par. III was intended to avoid. However,

[i]t was never intended that the substance of the entire act should be set forth in the caption. It was not contemplated that every detail stated in the body should be mentioned in the caption. If what follows after the enacting clause is definitely related to what is expressed in the title, has a natural connection, and relates to the main object of legislation, . . . there is no infringement of the constitutional [provision]. . . . Any provision in the body which is germane to [the act's] general purpose as embraced in the title [does not violate] the [Constitution].

*Cady v. Jardine*, 185 Ga. 9, 10-11 (193 SE 869) (1937). See also *Crews v. Cook*, 220 Ga. 479, 481 (139 SE2d 490) (1964). As the trial court correctly found, H.B. 181 generally pertains to PSJF authorities and subsection (c) of OCGA § 36-75-11 contained in H.B. 181 applies to authorities in counties that have activated PSJF authorities. We agree with the trial court that these provisions are logically related and do not embrace discordant subjects.

Appellants also assert that there is no "logical or natural connection" between the WTLA Act and the DAL but base that assertion solely on the argument that the Legislature had "no rational justification" for imposing a referendum requirement on DADC "simply because the county in which the authority is located has activated a PSJF Authority under the WTLA." However, "[i]n determining constitutional questions, like others, the courts are not permitted to concern themselves with the wisdom of an act, . . . but are confined to settled principles of law under the long-established

42

general rule." *Mayes v. Daniel*, supra, 186 Ga. at 350 (1). It was the Legislature's decision to enact a statute imposing a referendum requirement on any authority that has been authorized to incur bonded indebtedness in a county with an activated PSJF authority when that authority has constructed or operates buildings or facilities for use by a department, agency, division or commission of such county. Based on our review of the manner in which the Legislature enacted OCGA § 36-75-11, we conclude that it does not suffer from any of the constitutional infirmities alleged by appellants. Therefore, the trial court did not err by finding H.B. 181 constitutional under the multiple subject matter provision.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 28, 2009 —
RECONSIDERATION DENIED NOVEMBER 2, 2009.

*Bryan, Cave, Powell & Goldstein, Gregory H. Worthy, W. Scott Sorrells, Daniel G. Ashburn, William J. Linkous III, Duane Pritchett,* for appellants.

*Michael J. Jacobs,* pro se.

*Gwendolyn Keyes Fleming, District Attorney,* for appellees.