S09A1807. GLIEMMO et al. v. COUSINEAU et al.
(694 SE2d 75)

CARLEY, Presiding Justice.

Carol and Robert Gliemmo (Appellants) brought a medical malpractice action against emergency room doctor Mark Cousineau, Emergency Medical Specialists of Columbus, P.C., and St. Francis Hospital, Inc. (Appellees). After Appellees answered the complaint, Appellants filed a challenge to the constitutionality of OCGA § 51-1-29.5 (c), which provides:

In an action involving a health care liability claim arising out of the provision of emergency medical care in a hospital emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department, no physician or health care provider shall be held liable unless it is proven by clear and convincing evidence that the physician or health care provider's actions showed gross negligence.

The trial court rejected the constitutional challenge, but issued a certificate of immediate review. Appellants applied for interlocutory

review, and this Court granted the application to consider the constitutionality of the statute. Appellants filed a timely notice of appeal.

1. Appellants contend that OCGA § 51-1-29.5 (c) is a special law that violates the uniformity clause of the Georgia Constitution because it sets forth a gross negligence standard of liability only for certain emergency care providers. The uniformity clause provides:

> Laws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general law, except that the General Assembly may by general law authorize local governments by local ordinance or resolution to exercise police powers which do not conflict with general laws.

Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (a). Thus, "[t]o violate [this] constitutional provision, the statute in question must either be a general law which lacks uniform operation throughout the state or a special law for which provision has been made by existing general law." *Lasseter v. Ga. Public Service Comm.*, 253 Ga. 227, 229 (2) (319 SE2d 824) (1984). This Court has found a statute to be a special law where it "deals with a limited activity in a specific industry during a limited time frame." *Lasseter v. Ga. Public Service Comm.*, supra (special law applied to only one power plant converting from petroleum to coal). See also *Celotex Corp. v. St. Joseph Hosp.*, 259 Ga. 108, 110 (376 SE2d 880) (1989) (special treatment for certain asbestos claims). Conversely, " '[a] law which operates uniformly upon all persons of a designated class is a general law within the meaning of the Constitution, provided that the classification thus made is not arbitrary or unreasonable.' [Cit.]" *Terrell County v. Albany/Dougherty Hosp. Auth.*, 256 Ga. 627, 630 (6) (352 SE2d 378) (1987). Indeed, a law operating uniformly throughout the State, but from which the General Assembly excepts certain persons or things, is still a general law. *McAllister v. American Nat. Red Cross*, 240 Ga. 246, 248 (2) (240 SE2d 247) (1977).

In *Terrell County v. Albany/Dougherty Hosp. Auth.*, supra, this Court rejected a claim that the Hospital Care for Pregnant Women Act, OCGA § 31-8-40 et seq., is an unconstitutional special law. That Act "requires certain hospitals to provide emergency care to pregnant women in labor. . . ." *Terrell County v. Albany/Dougherty Hosp. Auth.*, supra at 627. Moreover, like OCGA § 51-1-29.5 (c), that Act provides that there is no civil liability thereunder unless a physician, nurse, medical assistant, hospital or its agent or employee "has been grossly negligent in the provision of such services. . . ." OCGA §

31-8-44. In rejecting the claim that the Act is unconstitutional special legislation, this Court found that it "operates statewide and is applicable to all hospitals authorized to operate as provided in the statute." *Terrell County v. Albany/Dougherty Hosp. Auth.*, supra at 630 (6).

Unlike this case, the gross negligence standard of care was not specifically attacked in *Terrell County*. However, that provision was enacted as part of the legislation that was expressly found not to be a special law. Ga. L. 1984, pp. 1389, 1393, § 1; Ga. L. 1985, pp. 829, 834, 841, § 3. Likewise, OCGA § 51-1-29.5 (c) is not a special law affecting only a limited activity in a specific industry during a limited time frame. Rather, as with the Hospital Care for Pregnant Women Act, it is a general law because it operates uniformly upon all health care liability claims arising from emergency medical care as provided in the statute, and as fully discussed in Division 3 of this opinion, that "classification of the designated class is neither arbitrary nor unreasonable. [Cit.]" *State v. Martin*, 266 Ga. 244, 246 (4) (466 SE2d 216) (1996). See also *Lasseter v. Ga. Public Service Comm.*, supra ("requirement of reasonable classification comes from the equal protection guarantee").

The dissent misses the fundamental point that *Terrell County* expressly held that an attack on the Hospital Care for Pregnant Women Act as special legislation must fail because that Act, like the statute in this case, operates uniformly throughout the State and does not make an arbitrary or unreasonable classification. Instead, the dissent focuses on standing, a wholly unrelated issue that was not even addressed in *Terrell County*. Moreover, the dissent mistakenly relies on *Celotex Corp. v. St. Joseph Hosp.*, supra, to find that OCGA § 51-1-29.5 (c) is a special law. *Celotex* is something of an anomaly since it has never been relied upon by another court to find a statute to be a special law, and its analysis has instead been rejected by other courts in similar cases. *Independent School Dist. No. 197 v. W.R. Grace & Co.*, 752 FSupp. 286, 293 (I) (B) (1) (D. Minn. 1990) (noting that defendant could cite only one case, *Celotex*, to support argument that asbestos revival statute was unconstitutional special legislation); *Wyatt v. A-Best Products Co.*, 924 SW2d 98, 107 (V) (Tenn. App. 1995) (noting that *Celotex* is the only case in conflict with conclusion that an asbestos-claims exception statute is not unconstitutional). Moreover, *Celotex* is distinguishable from this case. The statute in that case became effective in April 1988 and applied to revive only actions against manufacturers or suppliers of asbestos " 'which might otherwise be barred prior to July 1, 1990, as a result of expiration of the applicable period of limitation. . . .'" *Celotex Corp. v. St. Joseph Hosp.*, supra at 109. The statute further required any such action to "be commenced no later than July 1,

1990." *Celotex Corp. v. St. Joseph Hosp.*, supra. In finding that statute to be a special law, this Court noted that it dealt " 'with a limited activity in a specific industry during a limited time frame. . . .' [Cit.]" *Celotex Corp. v. St. Joseph Hosp.*, supra at 110. Unlike the statute in *Celotex*, OCGA § 51-1-29.5 (c) does not contain any time restrictions. Furthermore, rather than dealing with such a narrow activity as a limited class of asbestos claims, the statute here has a much broader scope. It is not limited to claims based on a specific type of emergency medical care, and instead, it applies generally to all health care liability actions throughout the State which arise from emergency medical care as set forth in the statute. See *Development Auth. of DeKalb County v. State of Ga.*, 286 Ga. 36, 40 (3) (684 SE2d 856) (2009) (statute not a special law where it "applies generally to '(a)ny authority' that meets the criteria in [the statute]"). Therefore, contrary to the dissent and as noted above, the statute in this case, unlike that in *Celotex*, is not a special law.

> "Our State Constitution only requires a law to have uniform operation; and that means that it shall apply to all persons, matters, or things which it is intended to affect. If it operates alike on all who come within the scope of its provisions, constitutional uniformity is secured. Uniformity does not mean universality. This constitutional provision is complied with when the law operates uniformly upon all persons who are brought within the relations and circumstances provided by it." [Cits.]

*State v. Martin*, supra. As a general law that operates alike on all who come within its scope, OCGA § 51-1-29.5 (c) complies with the uniformity provision of the Georgia Constitution.

2. Because OCGA § 51-1-29.5 (c) is a general law, it "does not violate Art. III, Sec. VI, Par. IV (c), Ga. Const. of 1983, which prohibits *special* laws relating to the rights or status of private persons." (Emphasis in original.) *State v. Martin*, supra at 246 (5).

3. Appellants claim that OCGA § 51-1-29.5 (c) violates the Georgia equal protection guarantee because the statute only applies to malpractice actions involving emergency medical care in a hospital emergency department, and does not include actions arising from medical care provided outside of hospital emergency departments.

The Georgia equal protection clause provides that "[n]o person shall be denied the equal protection of the laws." Ga. Const. of 1983, Art. I, Sec. I, Par. II. This clause,

> which is construed to be consistent with its federal counterpart, requires that the State treat similarly situated

individuals in a similar manner. [Cits.] A successful equal protection challenge generally requires a showing that state action was undertaken with an unreasonable purpose or was arbitrary and capricious. [Cit.] However, under our equal protection clause, State legislative classification " 'is permitted when the classification is based on rational distinctions and . . . bears a direct and real relation to the (legitimate) object or purpose of the legislation.' " [Cits.]

*City of Atlanta v. Watson,* 267 Ga. 185, 187-188 (1) (475 SE2d 896) (1996).

Contrary to Appellants' claim, although OCGA § 51-1-29.5 (c) raises the burden of proof in certain cases, it does not deprive them of the right to a jury trial or any other fundamental right. See *Harry v. Glynn County,* 269 Ga. 503, 505-506 (3) (501 SE2d 196) (1998) (rejecting argument that OCGA § 9-11-56 is unconstitutional because it deprives litigants of the right to a jury trial). Since the code section "does not disadvantage a suspect class or interfere with the exercise of a fundamental right . . . it need only bear a reasonable relationship to a legitimate state purpose. [Cit.]" *Anderson v. Atlanta Committee for the Olympic Games,* 273 Ga. 113, 115 (1) (b) (537 SE2d 345) (2000). The General Assembly passed this code section as part of the Tort Reform Act of 2005. Ga. L. 2005, pp. 1, 11-13, § 10. In enacting that legislation, the General Assembly found that

[h]ospitals and other health care providers in this state are having increasing difficulty in locating liability insurance and, when such hospitals and providers are able to locate such insurance, the insurance is extremely costly. The result of this crisis is the potential for a diminution of the availability of access to health care services and a resulting adverse impact on the health and well-being of the citizens of this state. The General Assembly further [found] that certain civil justice and health care regulatory reforms as provided in this Act will promote predictability and improvement in the provision of quality health care services and the resolution of health care liability claims and will thereby assist in promoting the provision of health care liability insurance by insurance providers.

Ga. L. 2005, pp. 1-2, § 1.

Promoting affordable liability insurance for health care providers and hospitals, and thereby promoting the availability of quality health care services, are certainly legitimate legislative purposes. Furthermore, it is entirely logical to assume that emergency medical

care provided in hospital emergency rooms is different from medical care provided in other settings, and that establishing a standard of care and a burden of proof that reduces the potential liability of the providers of such care will help achieve those legitimate legislative goals. Although the classification made by OCGA § 51-1-29.5 (c) may be imperfect,

> "it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' [Cit.] 'The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, [they] may be, and unscientific.' [Cit.]"

*State Farm Mut. Auto. Ins. Co. v. Five Transp. Co.*, 246 Ga. 447, 451 (1) (271 SE2d 844) (1980).

In this case, Appellants have failed to meet their burden of proving that " " "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the government decisionmaker." ' [Cit.]" *City of Atlanta v. Watson*, supra at 188 (1). Indeed, the equal protection argument made by Appellants "boils down to nothing more than [a] claim that the General Assembly has made a bad policy judgment . . . and [such a claim] should be directed to the General Assembly and the Governor rather than this Court." *Rhodes v. State*, 283 Ga. 361, 363 (659 SE2d 370) (2008). Because the " " "legislative purpose [of OCGA § 51-1-29.5 (c)] is legitimate and the classification drawn has some reasonable relation to furthering that purpose, the classification passes [constitutional] muster." ' [Cit.]" *Smith v. Cobb County-Kennestone Hosp. Auth.*, 262 Ga. 566, 570 (1) (b) (423 SE2d 235) (1992).

4. Appellants contend that OCGA § 51-1-29.5 (c) violates due process because it does not define "gross negligence" and is thus unconstitutionally vague. However, that phrase "has a commonly understood meaning, and needs no specific definition within the statute." *Rouse v. Dept. of Natural Resources*, 271 Ga. 726, 729 (2) (a) (524 SE2d 455) (1999).

> Under OCGA § 51-1-4, gross negligence is the absence of even slight diligence, and slight diligence is defined in the Code section as "that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances." In other words, gross negligence has been defined as "equivalent to (the) failure to exercise even a slight degree of care" ([cits.]), or

"lack of the diligence that even careless men are accustomed to exercise." [Cit.]

*Pottinger v. Smith*, 293 Ga. App. 626, 628 (667 SE2d 659) (2008) (finding insufficient evidence of gross negligence under OCGA § 51-1-29.5 (c)). Accordingly, OCGA § 51-1-29.5 (c) satisfies "due process requirements, because it is not so vague and indefinite in its meaning that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application. [Cit.]" *Bell v. Austin*, 278 Ga. 844, 847-848 (2) (b) (607 SE2d 569) (2005). See also *Santana v. Ga. Power Co.*, 269 Ga. 127, 128 (3) (498 SE2d 521) (1998).

Appellants' additional constitutional vagueness challenge to the definition of "emergency medical care" set forth in OCGA § 51-1-29.5 (a) (5) is not properly before this Court because it was neither raised in the trial court, nor distinctly passed on by the trial judge. *Nathans v. Diamond*, 282 Ga. 804, 807-808 (2) (654 SE2d 121) (2007). Consequently, "the [additional] vagueness [challenge] cannot be considered on appeal. [Cits.]" *Marks v. State*, 280 Ga. 70, 75 (4) (623 SE2d 504) (2005).

*Judgment affirmed. All the Justices concur, except for Hunstein, C. J., and Benham and Thompson, JJ., who dissent.*

BENHAM, Justice, dissenting.

The Georgia Constitution prohibits the General Assembly from enacting a "local or special law . . . in any case for which provision has been made by an existing general law. . . ." 1983 Ga. Const., Art. III, Sec. VI, Par. IV (a). Since 1863, Georgia law has required that "[a] person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill[,]" and Georgia law has provided that "[a]ny injury resulting from a want of such care and skill shall be a tort for which recovery may be had." OCGA § 51-1-27. In 2005, the General Assembly enacted OCGA § 51-1-29.5 (c), which provides that certain physicians and health care providers in certain situations are not liable unless they are shown to have been grossly negligent. The majority concludes that the new law is a constitutional general law. I respectfully dissent because I believe the 2005 law is a special law that is unconstitutional on two grounds: the General Assembly previously enacted a general law concerning the standard of care to which medical personnel must adhere to avoid liability; and the classification of those affected by the new legislation is unreasonable.

1. "The broad objective" of the constitutional provision is "to insure that once the legislature entered a field by enacting a general law, that field must thereafter be reserved exclusively to general

legislation and could not be open to special or local laws." *City of Atlanta v. Hudgins*, 193 Ga. 618, 623 (19 SE2d 508) (1942). See also *Franklin County v. Fieldale Farms Corp.*, 270 Ga. 272 (2) (507 SE2d 460) (1998) (the uniformity clause of the 1983 Georgia Constitution "follows the preemption rule of previous constitutions by precluding local or special laws when general laws exist on the same subject"). "To violate the constitutional provision, the statute in question must either be a general law which lacks uniform operation throughout the state or a special law for which provision has been made by existing general law." *Lasseter v. Ga. Public Svc. Comm.*, 253 Ga. 227 (2) (319 SE2d 824) (1984).

A "special law" is one which "affects a limited area or class." *Lasseter*, 253 Ga. at 229 (2). While the state constitution does not prohibit special laws per se, the legislature cannot enact special laws affecting special classes "if it has previously legislated in that area by general law nor may it do so if the classification of those affected is unreasonable." Id. In the case at bar, the 2005 legislation affects a limited class of heath care providers, with that limited class defined by what health care they provide and where they provide it: the limited class consists of those physicians and health-care providers who provide emergency medical care in a hospital's emergency department, in a hospital's obstetrical unit, or in a surgical suite immediately following the patient's evaluation or treatment in a hospital emergency department. Those within the limited class are protected from liability by a lower standard of care and a higher burden of proof — they cannot be found liable for the care they provide unless it is established by clear and convincing evidence that they were grossly negligent.

In *Celotex Corp. v. St. Joseph Hosp.*, 259 Ga. 108 (376 SE2d 880) (1989), this Court found OCGA § 9-3-30.1 to be an unconstitutional special law. That statute extended or revived asbestos-related claims against manufacturers or suppliers otherwise constrained by the existing statute of limitation. The Court described OCGA § 9-3-30.1 as "deal[ing] with a limited activity in a specific industry during a limited time frame. . . ." Id. at 110. The "limited activity in a specific industry" was the manufacturing and supplying of material containing asbestos for the use in buildings, one limited situation within the entire hazardous chemical industry. Id. In the case before us, the limited activity OCGA § 51-1-29.5 (c) covers is the provision of medical emergency care after a patient has arrived in a hospital's emergency department or obstetrical unit, one limited situation within the scope of the entire health care industry.[1] Thus,

---

[1] Although OCGA § 51-1-29.5 (c) does not contain a "limited time frame," as mentioned

OCGA § 51-1-29.5 (c) is a special law and is subject to constitutional limitations as such.

The majority's reliance on *Terrell County v. Albany/Dougherty Hosp. Auth.*, 256 Ga. 627 (352 SE2d 378) (1987), for the proposition that the standard of care provision was upheld as a general law is misplaced. In that case, in which the Albany/Dougherty County Hospital Authority sought payment from Terrell County for services rendered to indigent pregnant residents of Terrell County, Terrell County challenged the constitutionality of certain statutory provisions, OCGA §§ 31-8-42 and 31-8-43 (c), which "involve[ ] the county's obligation to pay for services extended to its indigent pregnant residents by a hospital in another county." Id. These provisions are part of the Hospital Care for Pregnant Women Act (OCGA § 31-8-40 et seq.), which also includes a provision that requires a showing of gross negligence before a physician, nurse, medical assistant or a hospital or any of its agents or employees can be found civilly liable for malpractice in connection with treatment afforded indigent pregnant women in labor. OCGA § 31-8-44. In its holding, the *Terrell County* court stated: "An attack on OCGA § 31-8-40 *et seq.*, as special legislation also fails." *Terrell County*, 256 Ga. at 630 (emphasis supplied).

The majority in this case, due to the *Terrell County* court's use of the abbreviation "et seq.," concludes that, although the gross negligence standard of care found in OCGA § 31-8-44 was not specifically attacked in *Terrell County*, "that provision was enacted as part of the legislation that was expressly found not to be a special law." Maj. Op. at 9. There is no doubt that the *Terrell County* court's use of the term "et seq." is confusing and misleading. However, one plain, simple fact remains: The *Terrell County* court did not hold — nor could it have held — that OCGA § 31-8-44 is a general law because Terrell County did not have standing to raise such an attack. Standing is a " 'prerequisite to attacking the constitutionality of a statute.' " *Perdue v. Lake*, 282 Ga. 348, 348 (647 SE2d 6) (2007). A litigant has standing "only if that law has an adverse impact on that litigant's own rights." *In the Interest of A. C.*, 285 Ga. 829, 832 (1) (686 SE2d 635) (2009). OCGA § 31-8-44 did not adversely affect Terrell County's rights — the *Terrell County* record is devoid of any reference to medical malpractice or harm to any patient at all. It is impossible for anyone, let alone a county, to allege harm under

in *Celotex Corp.* and *Lasseter*, that phrase was used in both cases to describe the statute at issue as having a limited time frame. There is no requirement that a finite temporal application period exist in a statute to consider it affecting "a limited area or class," the definition of a special law. See *Lasseter*, 253 Ga. at 229. OCGA § 51-1-29.5 (c) is a special law because it "affects a limited area or class."

OCGA § 31-8-44, a statute that lowers the standard of care in certain medical malpractice cases, without attempting to show some form of malpractice or patient injury in the first place.

Furthermore, an attack on OCGA § 31-8-44 was not raised and ruled upon at the trial court in *Terrell County*. "[T]his court will never pass upon the constitutionality of an act of the General Assembly unless it clearly appears in the record that the point was directly and properly made in the court below and distinctly passed on by the trial judge." *Calhoun v. State*, 211 Ga. 112, 113 (84 SE2d 198) (1954). In its answer to the Albany/Dougherty Hospital Authority's complaint seeking payment for treatment afforded indigent pregnant Terrell County residents in labor, Terrell County raised two specific attacks on the constitutionality of "OCGA § 31-8-40 et seq." under Art. III, Sec. VI, Par. IV of the Georgia Constitution of 1983 that exclusively addressed the issue of reimbursement obligations. Terrell County then made one general attack on the entire Hospital Care for Pregnant Women Act: "O.C.G.A. Section 31-8-40 et seq. is unconstitutional . . . in that it is a law of a general nature which fails to operate uniformly throughout the whole State upon the subject or class of subjects with which it proposes to deal." The language of the attack, taken straight from *Lasseter*, supra, merely makes the claim that the whole Act is not a general law. The defendant did not raise a specific attack on the standard of care provision in the Act. This court cannot consider such "vague and indefinite attacks" on the constitutionality of a legislative act. *Dade County v. State of Ga.*, 201 Ga. 241, 245 (39 SE2d 473) (1946). No doubt due to Terrell County's failure to raise any attack on the standard of care provision as a special law, the *Terrell County* trial court merely ruled on the issue of the uniformity of the economic impact on counties. Thus, no constitutional attack on the standard of care provision in OCGA § 31-8-44 was raised and ruled upon in the *Terrell County* trial court. Therefore, *Terrell County* is inapposite and provides no support for the majority's holding.

2. Because OCGA § 51-1-29.5 (c) is a special law, the Georgia Constitution of 1983 requires compliance with specific constitutional limitations. One such constitutional limitation on a special law is the existence of a general law on the same subject. The uniformity clause of the Georgia Constitution of 1983 precludes the enactment of special legislation when "a general law exists on the same subject." *Fieldale Farms*, supra, 270 Ga. at 275. Preclusion "may be express or implied." Id. This constitutional special law prohibition is not limited "to those fields and subjects which have been completely exhausted by a general law. It embraces every field and subject which has been covered, though superficially, by a general law." *Hudgins*, supra, 193 Ga. at 623. Here, the General Assembly has already

enacted OCGA § 51-1-27, a general law which states the standard of care in medical malpractice cases to be "reasonable care." Because OCGA § 51-1-29.5 (c) is a special law that regulates the same subject matter as OCGA § 51-1-27, it is unconstitutional under the Georgia Constitution of 1983.

3. Even if there were no general law on point, OCGA § 51-1-29.5 (c) is an unconstitutional special law for its application of an unreasonable and arbitrary classification. In *Celotex Corp.*, supra, 259 Ga. 108, this Court struck down as an unconstitutional special law the statute which revived or extended the period of limitation within which a suit against asbestos manufacturers and suppliers could be sued because it singled out, through unreasonable classification, claims against asbestos manufacturers and suppliers from all other claims based on similar toxic substances. Id. at 110.

Here, the question is whether OCGA § 51-1-29.5 (c) is unreasonable or arbitrary in its classification. In determining whether the legislature's classification is unreasonable, we compare the statutory classification to the legislative purpose of the enactment. See *State v. Martin*, 266 Ga. 244, 246 (466 SE2d 216) (1996). In enacting OCGA § 51-1-29.5 (c), the General Assembly found

> that there presently exists a crisis affecting the provision and quality of health care services in this state. Hospitals *and other health care providers* in this state are having increasing difficulty in locating liability insurance and, when such hospitals and providers are able to locate such insurance, the insurance is extremely costly. The result of this crisis is the potential for a diminution of the availability of access to health care services and a resulting adverse impact on the health and well-being of the citizens of this state.

Ga. L. 2005, p. 1, § 1 (emphasis supplied). The General Assembly found that *all* health care providers, not merely those who treat patients after they arrive in hospital emergency rooms or obstetrical units, are incurring difficulty in locating affordable liability insurance. Similarly, *all* health care providers of emergency medical care, regardless of the location at which such care is provided, are incurring difficulty in locating affordable liability insurance. The General Assembly's effort to assist health care providers is arbitrary in that an emergency medical technician treating a patient who suffered a heart attack in an ambulance on the way to the emergency room does not receive the benefits of the statute simply because the patient has not yet arrived at the emergency room. The classification is unreasonable in that a physician who treats a patient for an

emergency medical condition in an emergency room receives the statute's additional protection while a physician who treats the same condition in his office or on a house call does not. Because OCGA § 51-1-29.5 (c) contains an unreasonable and arbitrary classification, it is an unconstitutional special law.

For the aforementioned reasons, I respectfully dissent from the majority's decision to uphold OCGA § 51-1-29.5 (c) against the challenge that it is an unconstitutional special law.

I am authorized to state that Chief Justice Hunstein and Justice Thompson join this opinion.

DECIDED MARCH 15, 2010 —
RECONSIDERATION DENIED APRIL 8, 2010.

*Oates & Courville, Samuel W. Oates, Jr., Traci G. Courville, Bondurant, Mixson & Elmore, Michael B. Terry, Nicole G. Iannarone, Kamal Ghali,* for appellants.

*Hall, Booth, Smith & Slover, Roger S. Sumrall, Carlock, Copeland & Stair, Wade K. Copeland, Ashley E. Sexton,* for appellees.

*Alston & Bird, Angela T. Burnette, Donna P. Bergeson, Owen, Gleaton, Egan, Jones & Sweeney, H. Andrew Owen, Jr., Jonathan C. Lippert, Amy J. Kolczak,* amici curiae.