In the Supreme Court of Georgia

Decided: July 5, 2016

S15G1446. ZARATE-MARTINEZ v. ECHEMENDIA, et al.

MELTON, Justice.

In March 2008, Olga Zarate-Martinez filed a medical malpractice complaint against Dr. Michael D. Echemendia, Atlanta Women's Health Group, P.C., Atlanta Women's Health Group, II, LLC, and North Crescent Surgery Center, LLC (collectively "Echemendia"), seeking damages for injuries she sustained during an open laparoscopic tubal ligation that was allegedly negligently performed and which resulted in a perforated bowel. Zarate-Martinez attached to her complaint an affidavit from Dr. Errol G. Jacobi. She later identified Dr. Charles J. Ward as an expert for summary judgment purposes, but she never submitted an affidavit from Dr. Ward in support of her complaint. Echemendia deposed Dr. Ward and Dr. Jacobi, moved to strike the testimony from both doctors on the grounds that they did not qualify as experts under OCGA § 24-7-702 (c), and sought summary judgment.

Zarate-Martinez responded to the merits of Echemendia's motion and challenged the constitutionality of § 24-7-702 (c), asserting that the statute denied her the right to a jury trial and denied her access to the courts, denied her due process and equal protection of the laws, violated separation of powers, was a law that made irrevocable grants of special privileges and immunities, and was a special law not of a general nature. Without any reference to the constitutional issues, on February 21, 2013, the trial court issued an order striking both experts' testimony, but granted Zarate-Martinez 45 days in which to file an affidavit from a competent expert witness.

Within 45 days of the February 21 order, Zarate-Martinez submitted an affidavit from Dr. Nancy W. Hendrix, but Echemendia moved to strike this affidavit as well on the grounds that it did not adequately demonstrate Hendrix's qualifications under OCGA § 24-7-702 (c). Zarate-Martinez then filed a supplemental affidavit from Hendrix outside of the 45-day time frame, and, in her reply to the motion to strike, reasserted her constitutional challenges to OCGA § 24-7-702 (c). Zarate-Martinez also asserted a new constitutional claim, specifically, that the provisions of OCGA §§ 24-7-702 (c) (2) (A) and (B) were unconstitutionally vague. Despite these arguments, however, the trial court

2

applied the terms of OCGA § 24-7-702 (c) and granted the motion to strike both of Hendrix's affidavits on July 17, 2014.[1] With Zarate-Martinez being left with no affidavits from qualified medical experts to support her medical malpractice claim, the trial court went on to dismiss Zarate-Martinez's complaint due to her failure to provide the necessary expert affidavit as required by OCGA § 9-11-9.1 (a). See OCGA § 9-11-9.1 (e) ("If a plaintiff files an affidavit which is allegedly defective, and the defendant to whom it pertains alleges, with specificity, by motion to dismiss filed on or before the close of discovery, that said affidavit is defective, the plaintiff's complaint shall be subject to dismissal for failure to state a claim").

In its July 17 order striking Hendrix's affidavits and dismissing Zarate-Martinez's case, the trial court only referenced Zarate-Martinez's previously raised constitutional challenges to OCGA § 24-7-702 (c) in two footnotes, stating:

> This statute is a codification of the Supreme Court's holding in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (113

---

[1] Although the trial court stated in its order that it was "loath" to do so, the court still considered Dr. Hendrix's untimely filed supplemental affidavit when reaching its decision to strike it.

3

SC 2786) (1993). See <u>Butler v. Union Carbide Corp.</u>, 310 Ga. App. 21, 32 (712 SE2d 537) (2011) ("Twelve years after <u>Daubert</u>, the Georgia Legislature in 2005 passed [the predecessor statute to OCGA § 24-7-702], which adopted the <u>Daubert</u> test for expert opinion testimony in civil actions in Georgia's state courts."). And Georgia courts are to interpret and apply OCGA § 24-7-702 by "draw[ing] from the opinions of the United States Supreme Court in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993); <u>General Electric Co. v. Joiner</u>, 522 U.S. 136 (1997); <u>Kumho Tire Co. Ltd. v. Carmichael</u>, 526 U.S. 137 (1999); and other cases in federal courts applying the standards announced by the United States Supreme Court in these cases." OCGA § 24-7-702 (f) . . . . Zarate-Martinez challenges the constitutionality of Section 702. "[T]he constitutionality of a statute is presumed, and . . . all doubts must be resolved in favor of its validity." <u>Albany Surgical, P.C. v. Georgia Dept. of Community Health</u>, 278 Ga. 366, 368 (602 SE2d 648) (2004). <u>Daubert</u> has survived constitutionality challenges, and the Court declines to hold that Section 702 violates due process requirements or is otherwise unconstitutional.

The Court of Appeals affirmed the trial court's ruling on merits, but did not reach the constitutional issues, finding that the trial court had not expressly ruled upon them. This Court granted Zarate-Martinez's petition for a writ of certiorari to determine (1) whether the Court of Appeals erred in holding that Zarate Martinez's constitutional challenges to OCGA § 24-7-702 (c) were not distinctly ruled on by the trial court and thus not preserved for appeal; (2) if so, whether any of Zarate Martinez's constitutional claims bring this case within this Court's exclusive appellate jurisdiction over all cases in which the

4

constitutionality of a law has been drawn into question; and (3) if this case is within this Court's exclusive appellate jurisdiction and the Court of Appeals opinion must therefore be vacated, how this Court should decide Zarate-Martinez's appeal. For the reasons that follow, we conclude that (1) the trial court did distinctly rule on Zarate-Martinez's constitutional challenges to OCGA § 24-7-702 (c); (2) there are constitutional issues raised by Zarate-Martinez and ruled upon by the trial court that bring this case within this Court's exclusive appellate jurisdiction, but the constitutional challenges to OCGA § 24-7-702 (c) raised by Zarate-Martinez are without merit; and (3) the trial court's ruling to strike two of Zarate-Martinez's experts' testimony was correct, but the decision to strike the expert affidavit of Dr. Hendrix must be reconsidered by the trial court in light of this Court's decision in Dubois v. Brantley, 297 Ga. 575 (775 SE2d 512) (2015). Accordingly, we vacate the ruling of the Court of Appeals, vacate the decision of the trial court with respect to its application of OCGA § 24-7-702 (c), and remand this case to the trial court with direction that it reconsider the admissibility of Dr. Hendrix's testimony in light of this Court's decision in Dubois, supra.

1. In its order dismissing Zarate-Martinez's medical malpractice

complaint, the trial court specifically addressed Zarate-Martinez's constitutional challenges to OCGA § 24-7-702. Indeed, the trial court referenced the fact that the constitutionality of the statute is to be presumed, and went on to specifically reject the idea that the statute "violates due process requirements or is otherwise unconstitutional." In other words, the trial court

> found, in relevant part, that the constitutional challenges raised by [Zarate-Martinez] were without merit. . . . We thus conclude that the superior court's ruling is effectively a distinct ruling on the constitutional issues and is a sufficient ruling to permit [Zarate-Martinez] to raise [her] constitutional challenges on appeal.

(Footnote omitted). Rouse v. Dept. of Natural Resources, 271 Ga. 726, 728 (1) (524 SE2d 455) (1999).

2. With respect to the constitutional challenges to OCGA § 24-7-702 that were raised and ruled upon below, this Court "shall exercise exclusive appellate jurisdiction in . . . all cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question." Ga. Const. of 1983 Art. VI, § VI., Par. II (1). However, "[w]here a law has been held to be constitutional as against the same attack being made, the case requires merely an application of unquestioned and unambiguous constitutional provisions and jurisdiction of the appeal is in the Court of Appeals." (Citation omitted.) Zepp v. Athens, 255

Ga. 449, 451 (2) (339 SE2d 576) (1986). As explained more fully below, although one of the constitutional attacks raised by Zarate-Martinez here has been previously rejected by this Court with respect to the former version of OCGA § 24-7-702 (c), see Mason v. Home Depot, U.S.A., Inc., 283 Ga. 271 (658 SE2d 603) (2008),[2] none of the other specific constitutional attacks against OCGA § 24-7-702 (c) made by Zarate-Martinez in the instant case and asserted here on appeal have been previously addressed by this Court, and this Court retains the exclusive jurisdiction to resolve them. Accordingly, we must vacate the opinion of the Court of Appeals in this case and address all of the constitutional claims including those which confer exclusive jurisdiction over this case upon this Court.

OCGA §§ 24-7-702 (c) (2) (A) and (B) state in relevant part:

(c) [I]n professional malpractice actions, the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the professional whose conduct is at issue, shall be admissible only if, at the time the act or omission is alleged to have occurred, such expert:

---

[2] In Mason, this Court rejected an equal protection challenge to OCGA § 24-9-67.1, which was the predecessor to OCGA § 24-7-702. The language of former OCGA §§ 24-9-67.1 (c) (2) (A) and (B) is identical to the language of OCGA §§ 24-7-702 (c) (2) (A) and (B).

7

* * *

(2) In the case of a medical malpractice action, had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in:

(A) The *active practice* of such area of specialty of his or her profession *for at least three of the last five years*, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue; or

(B) The teaching of his or her profession *for at least three of the last five years as an employed member of the faculty* of an educational institution accredited in the teaching of such profession, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in teaching others how to perform the procedure, diagnose the condition, or render the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue.

(Emphasis supplied.)

Zarate-Martinez claims that the above-highlighted portions of the statute render it unconstitutional because they create a law that (a) deprives her of substantive due process (see Ga. Const. of 1983 Art. I, § I, Par. I ); (b) deprives her of her right to a jury trial (see Ga. Const. of 1983 Art. I, § I, Par. XI); (c) deprives her of equal protection of the laws (see Ga. Const. of 1983 Art. I, § I,

8

Par. II and U.S. Constitution Amendment 14); (d) grants special privileges and immunities (see Ga. Const. of 1983 Art. I, § I, Par. X); (e) violates separation of powers (see Ga. Const. of 1983 Art. I, § II, Par. III); and (f) is a special law not of a general nature (see Ga. Const. of 1983 Art. III, § VI, Par. IV). In evaluating these challenges to OCGA § 24-7-702 (c),

> we recognize at the outset that all presumptions are in favor of the constitutionality of an Act of the legislature and that before an Act of the legislature can be declared unconstitutional, the conflict between it and the fundamental law must be clear and palpable and this Court must be clearly satisfied of its unconstitutionality. Moreover, because statutes are presumed to be constitutional until the contrary appears, the burden is on the party alleging a statute to be unconstitutional to prove it.

(Citation and punctuation omitted.) JIG Real Estate, LLC v. Countrywide Home Loans, Inc., 289 Ga. 488, 490 (2) (712 SE2d 820) (2011). With these principles in mind, we address each argument in turn.

(a) *Due Process*: Zarate-Martinez claims that the requirement for an expert witness to have been in active practice for at least three of the last five years before the alleged act that gave rise to a malpractice case denies her due process because the requirement is unconstitutionally vague. She also claims that the requirements for such experts to have been in active practice for at least three

9

of the last five years or to have been employed as a faculty member at an accredited educational institution for at least three of the last five years are not rationally related to any legitimate objective of the State. Zarate-Martinez is incorrect with respect to both arguments.

With regard to the due process vagueness challenge raised by Zarate-Martinez,

> [a] statute must be definite and certain to be valid, and when it is ""so vague and indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its application, it violates the first essential of due process of law."' [Cit.]" Hartrampf v. Ga. Real Estate Comm., 256 Ga. 45[,] 45-46 (1) (343 SE2d 485) (1986). To withstand an attack of vagueness or indefiniteness, a civil statute must provide fair notice to those to whom the statute is directed and its provisions must enable them to determine the legislative intent. Hartrampf, supra at 45; Bryan v. Ga. Public Svc. Comm., 238 Ga. 572, 574 (234 SE2d 784) (1977).

Jekyll Island-State Park Auth. v. Jekyll Island Citizens Ass'n, 266 Ga. 152, 153 (2) ( 464 SE2d 808) (1996).

Here, there is nothing unconstitutionally vague or indefinite about the requirement for an expert to have been engaged in the active practice of his or her proposed area of expertise for at least three of the last five years prior to the act that allegedly gave rise to a malpractice action in order to be qualified to

offer expert opinion evidence in such a case. To the extent that Zarate-Martinez argues that the term "active practice" could in any way lead to confusion, this argument fails in light of the plain language of OCGA § 24-7-702 (c) (2) (A), which makes clear that the amount of "active practice" necessary for a proposed expert to be qualified under OCGA § 24-7-702 (c) (2) (A) involves practice in the witness' area of expertise "with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge." The statute provides fair notice to those to whom it is directed and allows such individuals to readily determine the legislative intent behind the statute. See, e.g., JIG Real Estate, LLC v. Countrywide Home Loans, Inc., supra, 289 Ga. at 491-492 (2) (a).

Zarate-Martinez's other due process challenges to OCGA §§ 24-7-702 (c) (2) (A) and (B) regarding the active practice and employment requirements of the statute are also without merit. In evaluating these claims, because Zarate-Martinez's due process challenges do not involve a

> fundamental right or suspect class . . . we examine them under the lenient "rational basis" test. See State v. Nankervis, 295 Ga. 406, 409 (761 SE2d 1) (2014). Under this test, a statute does not violate due process in substance as long as it "bear[s] a rational relationship to a legitimate objective of the government Id.

11

Barzey v. City of Cuthbert, 295 Ga. 641, 645 (4) (a) (763 SE2d 447) (2014).

This Court has previously addressed the objective of OCGA § 24-7-702.

The statute

> was enacted as part of the Tort Reform Act of 2005, an attempt by the General Assembly to address what it viewed as "a crisis affecting the provision and quality of health care services in this state." See Ga. L. 2005, p. 1, §§ 1, 7. Together with the other civil justice and health care regulatory reforms in the Act, the expert witness statute was intended to help reduce the cost of liability insurance for health care providers and ensure citizens continued access to care. Id. at pp. 1-2, § 1; see also Hannah Yi Crockett et al., Peach Sheets, Torts and Civil Practice, 22 Ga. St. U. L. Rev. 221, 223-224 (2005) (advocates promoted tort reform to address "the ever increasing medical malpractice insurance premiums resulting from large jury awards and settlements"). The intent of the expert witness statute in particular is codified in the statute itself: "It is the intent of the legislature that, in all civil proceedings, the courts of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states." OCGA § 24-7-702 (f); see also Nathans v. Diamond, 282 Ga. 804, 806 (1) (654 SE2d 121) (2007) (purpose of statute was to ensure that expert testimony be given only by those who have "significant familiarity" with subject matter at issue).

Hankla v. Postell, 293 Ga. 692, 695-96 (749 SE2d 726) (2013).

The teaching and active practice requirements of OCGA § 24-7-702 (c) bear a rational relationship to the legitimate government goal of "reduc[ing] the cost of liability insurance for health care providers and ensur[ing] citizens

continued access to care." <u>Hankla</u>, supra. Indeed, by ensuring that experts must have recent experience in the areas about which they are opining through teaching or active practice before they are qualified to offer such opinions in a malpractice case, the Legislature has worked to reduce the possibility of frivolous malpractice claims being litigated extensively in court, which could raise the cost of liability insurance for health care providers and jeopardize citizens' continued access to quality care. The statute "does not violate due process in substance." <u>Barzey</u>, supra.

(b) *Right to Trial by Jury*: Zarate-Martinez argues that, because OCGA § 24-7-702 (c) operates to exclude the expert affidavit evidence that would support her medical malpractice claim, thereby subjecting her complaint to dismissal (see OCGA § 9-11-9.1 (a)), she is unconstitutionally deprived of her right to try her medical malpractice case. See Ga. Const. Of 1983 Art. I, § I, Par. XI (a) ("The right to trial by jury shall remain inviolate"). However, "[t]he constitutional guaranty of jury trial does not limit the power of the legislature to prescribe rules of evidence or of procedure." <u>Crowell v. Akin</u>, 152 Ga. 126, 138 (108 SE 791) (1921). The provisions of OCGA § 24-7-702 (c) merely create procedural standards for experts that must be met in order for a medical

13

malpractice claim to move forward on the merits. See, e.g., <u>Nathans</u>, supra, 282 Ga. at 809 (2) (requirement of filing proper medical expert affidavit with compliant in medical malpractice cases is a procedural one, which does not affect substantive right of action for medical malpractice). The statute does not in any way infringe upon a plaintiff's right to proceed to trial on an appropriately pled claim with an appropriate affidavit from a competent expert.

(c) *Equal Protection*: Zarate-Martinez contends that OCGA §§ 24-7-702 (c) (2) (A) and (B) violate the guarantees of equal protection of the laws found in Ga. Const. of 1983 Art. I, § I, Par. II and the Fourteenth Amendment of the U.S. Constitution. Specifically, she claims that the statute violates equal protection because it subjects medical malpractice plaintiffs like herself to different rules for the viability of expert testimony than similarly situated plaintiffs in other types of professional malpractice actions.[3]

---

[3] To the extent that Zarate-Martinez also claims that the statute violates equal protection because it creates requirements for the admission of expert testimony in civil cases that do not exist in criminal cases, Echemendia correctly points out that this Court has already rejected this identical equal protection challenge to the former version of OCGA § 24-7-702 (c) in <u>Mason</u>, supra, 283 Ga. 271. We therefore reject that argument again here. However, because Zarate-Martinez has also raised a different equal protection claim in this case that this Court has not previously addressed with

14

As with her substantive due process claim, because Zarate-Martinez's equal protection challenge to OCGA § 24-7-702 (c) does not involve any

> fundamental right or suspect class . . . we examine [it] under the lenient "rational basis" test. See State v. Nankervis, [supra,] 295 Ga. [at] 409 . . . .[T]o survive an equal protection challenge, "the classifications drawn in the statute [must] bear a rational relationship to a legitimate end of government not prohibited by the Constitution." Id. at 408 (citation omitted).

Barzey, supra, 295 Ga. at 645 (4) (a).

In this regard, while this Court has not previously addressed the specific equal protection challenge that Zarate-Martinez has raised in the context of OCGA § 24-7-702 (c), it has previously concluded that it is proper for the Legislature to classify medical malpractice cases differently from other professional malpractice cases without running afoul of equal protection under the "rational basis" test. See Nichols v. Gross, 282 Ga. 811, 813 (653 SE2d 747) (2007) ("This Court has on several occasions found that a separate classification of medical malpractice apart from all other tort claims is constitutional") (citation omitted). For example, "as a matter of logic, when this Court approved as constitutional a classification treating medical malpractice cases differently

_____

respect to OCGA § 24-7-702 (c), we must also address that separate claim.

15

from 'other' tort cases for purposes of the statute of limitations, the category 'other' tort cases necessarily included cases involving non-medical professional malpractice." Id. at 814. Here, because the same sorts of policy concerns regarding the uncertainty of the practice of medicine and the effect that malpractice claims may have on insurance rates are present here just as much as they are in cases involving statutes of limitations – and, indeed, in every medical malpractice action – we find "no merit to [Zarate-Martinez's] claim that OCGA § [24-7-702 (c)] creates an arbitrary classification between claims asserted in medical malpractice cases and claims involving other professional malpractice." Id. at 814.

(d) *Special Privileges and Immunities*: Pursuant to Ga. Const. of 1983 Art. I, § I, Par. X, "[n]o bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed." Zarate-Martinez asserts that OCGA §§ 24-7-702 (c) (2) (A) and (B) grant irrevocable special privileges and immunities to physicians in order to reduce their potential liability if they become subject to a medical malpractice action. However, OCGA §§ 24-7-702 (c) (2) (A) and (B)  do no such thing, as this case "involves only [a] statute[]

16

passed by the General Assembly which [is] clearly revocable at the will of the legislature. Thus the[] [Special Privileges and Immunities] sections of the Constitution were not adopted with a case such as this in mind." <u>Nash v. Nat'l Preferred Life Ins. Co.</u>, 222 Ga. 14, 20 (2) (148 SE2d 402) (1966). See also <u>Parrish v. Employees' Ret. Sys.</u>, 260 Ga. 613, 615 (2) (398 SE2d 353) (1990) ("[I]rrevocable," as used [in the Special Privileges and Immunities clause of the Georgia Constitution], mean[s] "incapable of being revoked"); 16B Am Jur 2d Constitutional Law § 922 ("The general principle involved in constitutional equality guarantees forbidding special privileges or immunities seems to be that if legislation, without good reason and just basis, imposes a burden on one class which is not imposed on others in like circumstances or engaged in the same business, it is a denial of the equal protection of the laws to those subject to the burden and a grant of an immunity to those not subject to it").

(e) *Separation of Powers*: Zarate-Martinez is also incorrect in her assertion that OCGA § 24-7-702 (c) violates separation of powers because it imposes evidentiary parameters within which a judge must determine whether a proposed expert's testimony is admissible in a medical malpractice case. In direct contradiction to Zarate-Martinez's argument, the Georgia Constitution

17

specifically provides that "[a]ll rules of evidence shall be as prescribed by law." Ga. Const. of 1983 Art. VI, § I, Par. IX. By providing evidentiary guidance to the judiciary through the passage of OCGA § 24-7-702 (c), the General Assembly has simply acted consistently with its constitutional duty, rather than in contravention of it. See Bell v. Austin, 278 Ga. 844, 846 (2) (607 SE2d 569) (2005) ("[T]he legislature has power to establish rules of evidence where not in conflict with the constitution or rights guaranteed by it") (citation and punctuation omitted).

(f) *Special Law*: Finally, Zarate-Martinez contends that OCGA § 24-7-702 (c) is an unconstitutional special law that violates the Uniformity Clause of the Georgia Constitution (see Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (a)), because the requirements that an expert be in active practice or have been teaching as an employed member of the faculty of an accredited institution for at least three of the last five years before the incident giving rise to the cause of action only apply in medical malpractice cases.

Pursuant to the Uniformity Clause, "[l]aws of a general nature shall have uniform operation throughout this state and no local or special law shall be enacted in any case for which provision has been made by an existing general

law. . . ." Id. In other words, a statute would run afoul of the Constitution if it were "a general law which lack[ed] uniform operation throughout the state or a special law for which provision ha[d] been made by existing general law." Lasseter v. Ga. Public Svc. Comm., 253 Ga. 227, 229 (2) (319 SE2d 824) (1984). However,

> "[o]ur State Constitution only requires a law to have uniform operation; and that means that it shall apply to all persons, matters, or things which it is intended to affect. If it operates alike on all who come within the scope of its provisions, constitutional uniformity is secured. Uniformity does not mean universality. This constitutional provision is complied with when the law operates uniformly upon all persons who are brought within the relations and circumstances provided by it." [Cits.] *A law which operates uniformly upon all persons of a designated class is a general law within the meaning of the Constitution, provided that the classification thus made is not arbitrary or unreasonable.* [Cit.]

(Citation omitted; emphasis supplied.) State v. Martin, 266 Ga. 244, 246 (4) (466 SE2d 216) (1996).

Here, OCGA § 24-7-702 (c) applies uniformly to all experts in all medical malpractice actions, and the fact that medical malpractice actions are classified differently from other tort actions in this regard is not arbitrary or unreasonable. See Gliemmo v. Cousineau, 287 Ga. 7, 9-10 (1) (694 SE2d 75) (2010) (OCGA § 51-1-29.5 (c), which "applie[d] generally to all health care liability actions

19

throughout the State which ar[o]se from emergency medical care as set forth in the statute . . . [was] a general law that operate[ed] alike on all who c[a]me within its scope [and] complie[d] with the uniformity provision of the Georgia Constitution"). OCGA § 24-7-702 (c) is a general law within the meaning of the Constitution that does not run afoul of the Uniformity Clause.

3. Having determined that OCGA § 24-7-702 (c) is not unconstitutional on any of the bases raised by Zarate-Martinez, we now turn to the merits of whether the trial court abused its discretion by concluding that Zarate-Martinez's medical malpractice case was subject to dismissal due to her failure to provide competent expert evidence as required by the statute. See Mason, supra, 283 Ga. at 279 (5) ("Whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion") (citation and punctuation omitted).

As an initial matter, because the record reveals that Zarate-Martinez never submitted an affidavit from Dr. Ward in support of her medical malpractice complaint as required by OCGA § 9-11-9.1 (a), we need not address the question whether he would have been qualified to submit such an affidavit in support of the complaint. See OCGA § 9-11-9.1 (a) ("[T]he plaintiff shall be

20

required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim"). See also, e.g., Craigo v. Azizi, 301 Ga. App. 181 (2) (687 SE2d 198) (2009) (in the absence of required affidavit from expert qualified under former version of OCGA § 24-7-702 (c), medical malpractice complaint subject to dismissal pursuant to OCGA § 9-11-9.1 (a)). Indeed, without any affidavit from Dr. Ward being filed in support of the complaint, the complaint would be subject to dismissal unless a competent affidavit from some other expert witness existed to save the case from dismissal. Accordingly, Dr. Ward's qualifications or lack thereof under OCGA § 24-7-702 (c) have no bearing on the question whether the trial court properly dismissed Zarate-Martinez's medical malpractice complaint.

With respect to the affidavit from Dr. Jacobi that Zarate-Martinez did file with her medical malpractice complaint, this affidavit contains no statement indicating that Dr. Jacobi had been in active practice for at least three of the last five years prior to the alleged negligent act of Echemendia or that he had been employed as a faculty member at an accredited educational institution for at least three of those last five years. See OCGA § 24-7-702 (c). Therefore, the affidavit

21

on its face fails to show that Dr. Jacobi is qualified to offer expert opinion evidence in this case under the plain terms of OCGA § 24-7-702 (c), and the trial court did not abuse its discretion in determining that Dr. Jacobi was not qualified under the statute.

This leaves only the two affidavits filed by Dr. Hendrix, one of which was timely filed within the 45-day time period granted to Zarate-Martinez by the trial court after the testimony of her first two experts had been properly stricken, and one of which was not.

In her first affidavit, Dr. Hendrix stated that she had "regularly practiced for more than 5 years before the performance of the tubal ligation performed by Dr. Echemendia in this case;" that "[o]ne of the surgical procedures taught to [her while she was a medical student in the 1990s] was the tubal ligation;" and that she had "performed open laproscopies on patients over the course of years of [her] internship, residency, and private practice." The trial court concluded that, because this affidavit did not show that Dr. Hendrix had performed an open laparoscopic *tubal ligation*, the type of procedure at issue in this case, she was not a qualified expert under OCGA § 24-7-702 (c) (2) (A). However, as this Court clarified in <u>Dubois v. Brantley</u>, supra, 297 Ga. at 584-585 (2), a year after

22

the trial court here issued its order dismissing Zarate-Martinez's case:

> A careful reading of the text [of OCGA §§ 24-7-702 (c) (2) (A) and (B)] shows that Rule 702 (c) (2) (A) and (B) *do not require that an expert actually have performed or taught the very procedure at issue.* Rather, these provisions require only: [t]hat the expert has "actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given"; [t]hat this "actual professional knowledge and experience" is derived from the expert "having been regularly engaged in … [t]he active practice of such area of specialty … for at least three of the last five years … [or] [t]he teaching of his or her profession for at least three of the last five years as an employed member of the faculty of an educational institution accredited in the teaching of such profession"; and [t]hat the expert has been "regularly engaged in [active practice or teaching] with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure … [or] teaching others how to perform the procedure." OCGA § 24-7-702 (c) (2) (A), (B). No doubt, the simplest way to demonstrate that an expert has "an appropriate level of knowledge … in performing [a] procedure … [or] teaching others how to perform [a] procedure" is by proof that the expert actually has done these things himself. Moreover, it may be that, in many cases, if an expert has not actually performed or taught a procedure himself, he will be found lacking "an appropriate level of knowledge." But by the plain terms of the statute, the pertinent question is whether an expert has "an appropriate level of knowledge … in performing the procedure … [or] teaching others how to perform the procedure," not whether the expert himself has actually performed or taught it.

(Emphasis supplied). Accordingly, based on this Court's decision in <u>Dubois</u>,

supra, although it could very well be the case that Dr. Hendrix did not

demonstrate in her affidavit that she had the "appropriate level of knowledge …

in performing the procedure" in question in this case, the trial court was not

authorized to reach that conclusion by focusing solely on fact that Dr. Hendrix

did not state in this initial affidavit that she had "performed . . . the very

procedure at issue" here. Id. The trial court must therefore reconsider its

decision in relation to this initial affidavit under the parameters set forth in

Dubois, requiring that it consider whether Dr. Hendrix "has an appropriate level

of knowledge … in performing the procedure" at issue in order to be qualified

as an expert under OCGA § 24-7-702 (c) (2) (A).

In the untimely filed supplemental affidavit from Dr. Hendrix that the trial

court also opted to consider (see Liberty Nat'l Life Ins. Co. v. Houk, 248 Ga.

111, 112 (1) (281 SE2d 583) (1981) ["[T]he consideration of an untimely

affidavit is within the trial court's discretion"]), Dr. Hendrix clarified that she

had performed "many [open laparoscopic] tubal ligations in each of the five

years before the 'open laparoscopy' tubal ligation Dr. Echemendia performed

on . . . Zarate-Martinez." In rejecting this supplemental affidavit, the trial court

once again relied on the number of open laparoscopic tubal ligations that Dr.

Hendrix may or may not have performed in at least three of the last five years,

24

rather than focusing on whether she had the "appropriate level of *knowledge* … in performing the procedure" at issue, in order to be qualified as an expert. (Emphasis supplied). OCGA § 24-7-702 (c) (2) (A). Because the trial court's reasoning with regard to striking this second affidavit is also inconsistent with the analysis that this Court set forth in Dubois, the trial court must reconsider its decision relating to this untimely filed affidavit under the requirements of Dubois as well.

Accordingly, we affirm that portion of the trial court's decision to strike the testimony of Drs. Ward and Jacobi, vacate the trial court's decision to strike the affidavits of Dr. Hendrix and dismiss Zarate-Martinez's medical malpractice case, and remand this case to the trial court with the direction that it reconsider the testimony of Dr. Hendrix in a manner that is consistent with this Court's opinion in Dubois, supra.

Judgment of the Court of Appeals vacated. Judgment of the trial court affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.